RMH TECH LLC *et al.*,
　　　　*Plaintiffs*,

　　　v.

PMC INDUSTRIES, INC.,
　　　　*Defendant*.

No. 3:18-cv-00543 (VAB)

## RULING ON MOTION FOR SUMMARY JUDGMENT

RMH Tech, LLC ("RMH") and Metal Roof Innovations, Ltd. ("MRI") (collectively "Plaintiffs") have sued PMC Industries, Inc. ("PMC" or "Defendant"), alleging patent infringement. PMC asserts two counterclaims seeking a declaratory judgment of non-infringement or invalidity.

Defendant has moved for summary judgment.

For reasons that follow, the motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

RMH develops, manufactures, and sells mounting devices for metal roofs. Compl. ¶ 11, ECF No. 1. RMH owns US Patent No. 6,470,629 (the "Haddock Patent"), of which MRI is a licensee. *Id* ¶¶ 1–2. PMC offers and sells the COLOR Snap snow retention system, the accused infringing product. *Id* ¶ 3.

### A. Factual Allegations

Generally, both parties produce mounting adapter devices for metal roofs that operate by securing cross members, thereby allowing easier installation and removal of snow retention

systems. The Haddock Patent dates to 2002. *See* Haddock Patent, Def.'s Statement of Material

Facts at 1 ("Def.'s SMF"), Ex. 1, ECF No. 138-1.

### 1. The Stearns Patent

The Stearns Patent preceded the Haddock Patent. On March 11, 1997, the U.S. Patent and

Trademark Office issued U.S. Patent No. 5,609,326 (the "Stearns Patent") for an "Impervious

Membranous Roof Snow Fence System" to Brian and Alan Stearns. Stearns Patent at 1, Def.'s

SMF, Ex. 10, ECF No. 138-10.

The abstract of the Stearns Patent provides in relevant part:

> An impervious membranous roof snow fence system consisting of a plurality of flat six sided mounting plates affixed through membranous roofing to a roof deck below. The plates in two embodiments have vertical splines to be received by compartments or sleeves in mounting blocks or in another embodiment threaded vertical posts to be received by vertical holes in mounting blocks where the blocks fit over membranous patches fitted over the plates and fully sealed to the roofing where such patches have slits or holes in them to accommodate the spines or posts. The blocks once fastened to the plates have fastened to them in turn, porous fence flags that support horizontal fence pieces from which there hang vertical fence pieces.

*Id.* It is designed to prevent snow from cascading off roofs. *Id.* ¶ 9.



## 2.    The Haddock Patent

On October 29, 2002, the U.S. Patent and Trademark Office issued the Haddock Patent

for a Mounting System and Adaptor Clip, naming Robert Haddock, the primary owner of RMH

and MRI, as the inventor. Haddock Patent at 1.

The abstract of the Haddock Patent provides in relevant part:

> An apparatus for securing members to a surface. The apparatus
> includes a mounting clamp, a mounting adaptor, a panel support
> member and a fastener. The panel support member and the mounting
> adaptor are slidably interconnected to one another. The mounting
> adaptor is fixedly interconnected to the mounting clamp using the
> fastener . . . . The panel support member may be adapted to receive
> a panel.



FIG. 1

*Id.*

Claim 15 of the Haddock Patent reads:

> 15. A mounting system that comprises:
> first and second mounting clamps;
> first and second mounting adaptors, wherein each of said
> first and second mounting adaptors comprises first and second
> mounting adaptor portions, wherein said first mounting adaptor
> portion of said first mounting adaptor is disposed on said first
> mounting clamp, and wherein said first mounting adaptor portion of
> said second mounting adaptor is disposed on said second mounting
> clamp;
> first and second fasteners that anchor said first adaptor
> portion of said first and second mounting adaptors, respectively, to
> said first and second mounting clamps, respectively;
> a cross member; and

3

first and second means for detachably interconnecting said
cross member with said second adaptor portion of said first and
second mounting adaptors, respectively.

*Id.* at 10.

Plaintiffs claim that the COLOR Snap system infringes the Haddock Patent.

### 3.    The COLOR Snap Product

In 2016, Defendant introduced the COLOR Snap system to the market. Def.'s Answer at

8. The COLOR Snap system allegedly makes installing snow-retention systems on standing

seam metal roofs "easier and quicker," and "was independently developed and is significantly

different than Plaintiffs' patented system," *id.*, an allegation Plaintiffs deny. Pls.' Answer/Reply

to Am. Answer to Compl., Countercl. ("Pls.'s Answer") at 2, ECF No. 48.



### 4.    The Kovacs Patent

In September 2016, Plaintiff filed for a patent for a "retention apparatus, system and

method" with Tamas Kovacs as inventor and PMC as assignee. Kovacs Patent at 1, Def.'s SMF,

Ex. 4, ECF No. 138-4. On December 26, 2017, the U.S. Patent and Trademark Office issued U.S.

Patent No. 9,850,661 (the "Kovacs Patent"). *Id.*

The abstract of the Kovacs Patent reads in relevant part:

A retention apparatus, system and method for attaching a cross
member with an anchor assembly to a latch assembly of a top block
and clamp assembly secured to a wall, roof or other structure. . . .
According to the exemplary embodiment, the retention apparatus

4

and system may be secured to a standing seam on a metal roof to use an ice flag for retaining snow and ice between standing seams.

*Id.*



FIG. 5D

### 5. Persons of Ordinary Skill in the Art

Each party has offered expert opinions regarding whether the accused product infringes the Haddock Patent. These opinions relied on persons of ordinary skill in the art ("POSITA"), a term of art referring to a person with the relevant level of technical expertise in the pertinent field necessary to offer their qualified opinion as an expert in patent cases.

### a. Robert Haddock

Mr. Haddock has forty-six years of experience in the metal roofing industry, including twenty-five years of experience as an inventor. Haddock Decl. ¶ 2, ECF No. 58.

He defines a POSITA as:

> A person who has a minimum of ten years' experience working with metal standing seam roofs and other metal roofs types, having installed those systems and understanding how they function understanding some basic engineering principles that are involved, such as beam strength and flexural strength and tipping moments and the calculation of vector forces induced by snow on that roof surface, and a minimum of . . . three years or five years in designing systems like that, snow retention systems.

Haddock Dep. at 302:1–10, Pl.'s Statement of Material Facts ("Pls.' SMF"), Ex. B, ECF No. 141-5.

### b.    Robert Mercier

Robert Mercier, a PMC consultant, claims that a POSITA is

> a person with a Bachelor of Science degree (or equivalent) and two to five years of experience in snow retention evaluation and/or design. He or she should have a basic knowledge of how a snow retention system such as that described in the Asserted Claims are manufactured and how they are installed on a roof. They should have a basic understanding of how such systems function, including how the parts fit together and how they achieve their objectives.

Mercier Rep. ¶ 13, ECF. No. 138-5. Mr. Mercier has a Bachelor of Science in manufacturing engineering from Central Connecticut State University and a Master's Degree in engineering management from the University of Bridgeport, and thirty years' experience in the design and manufacturing of products in the engineering field, including snow retention products. *Id.* Mr. Mercier claims responsibility for the Ace Clamp brand of roof clamps and accessory products, including the Color Snap product. Mercier Decl. ¶ 6, ECF No. 64-9.

### c.    Carroll Marston

Carroll Marston, a PMC independent contractor and consultant, has offered his expert opinion on the invalidity claim. Marston Rep. ¶ 2, Def.'s SMF, Ex. 9, ECF. No. 138-9. Mr. Marston has worked as a manufacturing business consultant for the last twenty-eight years, with a specialty in roof coatings, multi-membrane systems, metal roof, standing seam metal roof, and related roofing products, Marston Decl. ¶ 4, ECF No. 64-1, and defines a POSITA in substantially similar terms as Mr. Mercier. *Compare* Marston Rep. ¶ 18, *with* Mercier Rep. ¶ 13.

## B.     Procedural Background

On July 11, 2016, Plaintiffs sued Defendant in the United States District Court for the

District of Colorado, alleging that Defendant is infringing on the design and novel function of the

Haddock Patent through the marketing and sale of the COLOR Snap system, and seeks monetary

damages as well as an injunction. *See* Compl. at 7.  Specifically, Plaintiffs argue Defendant's

product infringes on claim 15 of the Haddock Patent. *Id.*

Defendant, meanwhile, has brought counterclaims against Plaintiffs and seeks a

declaratory judgment of non-infringement or invalidity. ECF No. 43.

In May 2017, the District Court of Colorado held a hearing consistent with *Markman v.*

*Westview Instruments, Inc.*, 517 U.S. 370 (1996) ("*Markman* hearing")[1] to determine the

construction of the patent claims in question. ECF No. 52. The parties agreed that claim 15 of the

Haddock Patent is drafted in "means-plus-function" format to be construed by the Court "to

cover the corresponding structure, material, or acts described in the specification and equivalents

thereof." 35 U.S.C. § 112(f).

In October 2017, U.S. District Judge Christine Arguello issued an order constructing the

disputed claims of the Haddock Patent. ECF No. 66. Judge Arguello constructed the the

contested terms as follows:

---

[1] In this case, the U.S. Supreme Court unanimously affirmed the proposition that "the construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman*, 517 U.S. at 372. Thus, while the ultimate issue in a patent infringement case, whether infringement has occurred, remains the province of the jury, the first issue, one of claim constructions, is to be performed by the court. *See id.* at 384 ("The two elements of a simple patent case, construing the patent and determining whether infringement occurred, were characterized by former patent practitioner, Justice Curtis. 'The first is a question of law, to be determined by the court, construing the letters-patent, and the description of the invention and specification of claim annexed to them. The second is a question of fact, to be submitted to a jury.'") (citations omitted).

| Claim Term/Phrase | Relevant Asserted Claims | The Court's Construction |
|---|---|---|
| "mounting clamp" | 15, 16, 20, 35 | No construction required |
| "mounting adaptor" | 15, 16, 20, 35 | "Generally rectangular shaped bodies having first and second areas and that interfaces with the mounting clamp, and a cross member respectively." |
| "first and second mounting adaptor portions; i.e., a first mounting adaptor portion and a second mounting adaptor portion" | 15, 16, 20 | "The mounting adaptors each have a first distinct area separated from a second distinct area of the body." |
| "cross member" | 15, 16, 20, 35 | "A panel with a channel adapted to receive a roofing material and having a rear portion with an outwardly extending multi-surfaced protrusion designed to mate with corresponding substantially inverse surfaces of the second portion of the mounting adaptor." |
| "first and second means for detachably interconnecting said cross member with said second adaptor portion of said first and second mounting adaptors, respectively" | 15, 16, 20 | "First and second surfaces of the second portion of each mounting adaptor that interface with substantially inverse surfaces of the cross member protrusion." |
| "means for limiting relative movement between each of said first and second mounting adaptors and said cross member to a direction that is parallel with a longitudinal extent of said cross member" | 20 | "Partially affixing the first portion of the mounting adaptor to the mounting clamp such that the cross member can only move in a longitudinal direction, while the second portion of the mounting adaptor is engaged with the protrusion of the cross member." |
| "mounting surface" | 35 | No construction required |
| "interconnecting a cross member with a mounting surface" | 35 | "Sliding a mounting adaptor onto and along the length of a cross member in a direction parallel to the longitudinal axis of the cross member, wherein the first channel portion of the cross |

| | | member is closely mated with the beaded portion of the mounting adaptor, and the lip of the alignment portion of the mounting adaptor is received by the channel of the cross member in a closely fitting relationship, so that the cross member resists movement relative to the mounting adaptor in all other directions, and a fastener secures the mounting adaptor to the mounting clamp." |
|---|---|---|
| "positioning first and second mounting adaptors on said cross member" | 35 | "Sliding first and second mounting adaptors onto and along said cross member in a direction parallel to the longitudinal axis of the cross member to position the mounting adaptors on the cross member." |

Defendant moved for reconsideration regarding the claim construction order. ECF No. 74. Specifically, Defendant asked the Court to revise its construction of "first and second means for detachably interconnecting said cross member with said second adaptor portion of said first and second mounting adaptors, respectively," or, alternatively, to withdraw its construction and decline to construe the term. *Id.* at 1. Judge Arguello denied this motion. ECF No. 85.

In December 2017, Defendant then moved to stay the case for ninety days pending settlement discussions, a motion Plaintiffs opposed and Judge Arguello denied. ECF Nos. 78, 82, 87.

Defendant then moved to dismiss under Fed. R. Civ. P. 12(b)(3) or, alternatively, for the case to be transferred to this Court. ECF No. 86. On March 30, 2018, Judge Arguello granted the motion to transfer venues. ECF No. 95.

Defendant has now moved for summary judgment. ECF No. 137.

## II.    STANDARD OF REVIEW

A motion for summary judgment will be granted if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1314 (Fed. Cir. 2011) (finding summary judgment proper where nonmoving party fails to establish genuine issues of material fact).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Liberty Lobby*, 477 U.S. at 247–48; *see also Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1140 (Fed. Cir. 2018) (affirming summary judgment where no genuine issue of material fact existed). The moving party may satisfy this burden by pointing out to the district court an absence of evidence to support the nonmoving party's case. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam); *see also FastShip, LLC v. United States*, 892 F.3d 1298, 1307 (Fed. Cir. 2018) (Movant "must set forth by affidavit or other evidence specific facts" for the purpose of a summary judgment motion)

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts

or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*; *see also Atkinson v. Rinaldi*, 3:15-cv-913 (DJS), 2016 WL 7234087, at *1 (D. Conn. Dec. 14, 2016) (holding nonmoving party must present evidence that would allow reasonable jury to find in his favor to defeat motion for summary judgment); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1373 (Fed. Cir. 2005) ("If the movant shows a prima facie case for summary judgment, then the burden of production shifts to the nonmovant to present specific evidence indicating there is a genuine issue for trial.") (citation omitted).

## III.  DISCUSSION

Plaintiffs argue that the COLOR Snap system literally infringes the Haddock Patent. Pls.' Br. at 12. Defendant argues that the COLOR Snap system does not infringe the Haddock Patent with respect to Claim 15, the sole independent claim at issue. Def.'s Br. at 5. In the alternative, Defendant argues that Plaintiffs' claim is invalid because the Stearns Patent anticipates it or renders it obvious. *Id.* at 24. Defendant also argues that the terms of Claim 15 of the Haddock Patent are so indefinite as to fail to provide a standard by which a third party could reasonably determine that that an accused device infringes the patent. *Id*. at 35.

After the claim construction order by Judge Arguello, however, both the issue of non-infringement and invalidity should be resolved at the upcoming trial, not at the summary judgment stage. As a result, as discussed further below, Defendant's motion for summary judgment will be denied.

## A.      Non-Infringement[2]

A determination of direct infringement requires a two-step analysis: "First, the meaning and scope of the relevant claims must be ascertained. Second, the properly construed claims must be compared to the accused device." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004) (citations omitted). After holding a *Markman* hearing on May 11, 2017, Judge Arguello issued a ruling determining the meaning and scope of the disputed claim terms and then ruled on the construction of the claim. ECF No. 66.

Accordingly, step two requires the Court to compare the properly construed claims to the accused product to determine whether that product contains all of the limitations of the asserted claims, either literally or by equivalents. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1365 (Fed. Cir. 2002); *Innova/Pure Water*, 381 F.3d at 1115.

"Summary judgment of noninfringement may only be granted if, after viewing the alleged facts in the light most favorable to the nonmovant and drawing all justifiable inferences in the nonmovant's favor, there is no genuine issue whether the accused device is encompassed by the patent claims." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) (citing *Pitney Bowes, Inc. v. Hewlett–Packard Co.,* 182 F.3d 1298, 1304 (Fed. Cir. 1999)).

To prove infringement of claim 15 of the Haddock Patent, Plaintiffs must prove, in addition to all of the other claim requirements, that the COLOR Snap system meets the four elements, or limitations, of the claim.

---

[2] In addition to claiming direct infringement by Defendant, Plaintiffs also argues that the parties' experts have offered competing levels of skill in the art, which, as a factual is question left to the finder of fact, precludes summary judgment. Plaintiffs also challenge whether either of Defendants two expert witnesses, Messrs. Mercier and Marston, qualify as persons of ordinary skill trained in the art ("POSITA"). Because summary judgment is denied on other grounds stated above, the Court need not, and does not, address Plaintiffs' POSITA argument.

Defendant argues that summary judgment should enter in its favor because the COLOR Snap system does not meet the definitions of at least four elements of Claim 15 of the Haddock Patent: (1) "first and second mounting adaptor portions;" (2) "mounting adaptor;" (3) "cross member;" and (4) "first and second means for detachably interconnecting said cross member with said second adaptor portion of said first and second mounting adaptors, respectively." Def.'s Br. at 6–18. Defendant further argues that because the elements of Claim 15 are not found in the COLOR Snap system, "and Claims 16 and 20 depend on Claim 15," those claims are also not infringed by the accused product. *Id.* at 24. The Court disagrees.

### 1. The Kovacs Patent

As a preliminary matter, Defendant suggests that the COLOR Snap system, as the embodiment of the Kovacs Patent, duly issued by the U.S. Patent and Trademark Office years after the Haddock Patent, precludes infringement. Def.'s Br. at 1–2. Plaintiffs argue that the Kovacs Patent is irrelevant for the purposes of assessing infringement. The Court agrees.

A patent requires the invention or discovery of something that is "useful," "novel," and "non-obvious." 35 U.S.C. §§ 101–103. When making a determination with respect to a patent application, the U.S. Patent and Trademark Office focuses on these particular requirements of patentability—*i.e.* usefulness, novelty, and non-obviousness—and, to avoid operating in a vacuum, is guided by the prior art. *Sure Plus Mfg. Co. v. Kobrin*, 719 F.2d 1114, 1116 (11th Cir. 1983). Recognizing the expertise of the U.S. Patent and Trademark Office on these matters, Congress provided for a legal presumption of patent validity. *Id.* at 1117 (citing 35 U.S.C § 282 ("A patent shall be presumed valid.")).

The Haddock Patent issued on October 29, 2002. Haddock Patent at 1. Defendant alleges that, in September 2016, that it filed for a patent to "cover" the COLOR Snap system, and

disclosed the Haddock Patent as prior art. Def.'s Br. at 2; *see also* Kovacs Patent at 2. In December 2016, U.S. Patent No. 9,850,661 issued. Defendant therefore concludes that the patent examiner "clearly appreciated the differences between the Haddock Patent and the Accused Product described in the [Kovacs] Patent." Def.'s Br. at 2. The Court disagrees.

While the Kovacs Patent is entitled to the presumption of validity, like any other patent, the validity of the Kovacs patent is not at issue in this case. A patent does not convey, directly or indirectly, a right to make or use or sell—it vests its owner with only the right to exclude others. *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1580 (Fed. Cir. 1984) (citing *Herman v. Youngstown Car Mfg. Co.*, 191 F. 579, 584 (6th Cir. 1911)); *accord* 35 U.S.C. § 154(a)(1) ("Every patent shall contain . . . a grant to the patentee, his heirs or assigns, of the right to exclude others from making, using, offering for sale, or selling the invention . . . ."). Defendants fail to address "the well-known fact that a very considerable portion of the patents granted are in a field covered by a former relatively generic or basic patent, are tributary to such earlier patent, and cannot be practiced unless by license thereunder." *Atlas Powder Co.*, 750 F.2d at 1580–81 (citation omitted). "Patentable difference does not itself tend to negative infringement." *Id.* at 1581; *accord Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 43, 50 S. Ct. 9, 13, 74 L. Ed. 147 (1929) ("Nor is the infringement avoided . . . by any presumptive validity that may attach to the [ ] patent by reason of its issuance after the [prior art].").

The Kovacs Patent therefore does not provide a basis for summary judgment in Defendant's favor.

## 2. "First And Second Mounting Adaptor Portions"

The Haddock Patent requires "first and second mounting adaptor portions." Plaintiffs thus must prove that the COLOR Snap system possesses "mounting adaptors, each of which have a first distinct area separated from a second distinct area of the body."

Defendant argues that the COLOR Snap system does not include the requisite separation between two distinct areas, alleging that, because the relevant area of their product has no physical separation, there are no separate and distinct areas as required by the claim. Def.'s Br. at 7. On Defendant's behalf, Mr. Mercier has opined that "the limitations of the Asserted Claims are not found in the Accused Product." Mercier Rep. ¶ 30. Specifically, the top block of the accused product does not possess a first distinct area separated from a second distinct area of the body, meaning it has only the first distinct body. *Id.* ¶ 34.

In the alternative, he maintains that the first distinct area would extend "at least to the edge of the hole of the fastener," while the second distinct area would extend from the "tip adjacent to the cross member and extend to the end of the beveled surface that extends into the fastener hole." *Id.* ¶ 35 Accordingly, Mr. Mercier concludes that the COLOR Snap system does not have the required separation between the first and second distinct areas and suggests that the two areas, in fact, overlap, at the beveled edge. *Id.* Defendant also relies on Mr. Haddock's testimony, who, in response to being asked whether he would say it is spaced "apart from the second area," responded: "I wouldn't necessarily describe it that way, but it could be described that way." Haddock Dep. at 249:6–10.

Plaintiffs, by contrast, argue that the purpose and use of the top-block–clamp interface differs from the function of the top-block–cross-member protrusion interface and therefore are distinct and separate, as required by the Court's construction of the element. Mr. Haddock, by

way of a rebuttal expert report, opined that the first area of the mounting adaptor in the accused product interfaces with the top surface of the mounting clamp, while the second area interfaces with the cross member. Haddock Rebuttal Rep. at 19, ECF No. 141-4. Similarly, he opined that the second mounting adaptor includes a first area and a second area. *Id.* Mr. Haddock therefore testified that the "distinct areas" are separated by their "purpose and use." Haddock Dep. at 240:20–241:14.

Mr. Haddock opined that the mounting adaptor, as constructed by the Court, is present "literally" in the COLOR Snap system. *Id.* Haddock claims that the two areas of the mounting adaptor that interface with the clamp and the cross member of the accused product must be separated because it is physically impossible for the same surface or portion of surface of the mounting adaptor to interface with both the clamp and the cross member (either with our without a fastener). Haddock Aff. ¶ 17, ECF No. 141-1. Plaintiffs point out that, if the COLOR Snap system required a literal separation between the two distinct separate areas, the system described in the Haddock patent would be excluded from claim coverage, arguing that a construction that would yield such an oddity is questionable at best. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (setting out the terms of claim construction).

In reviewing the record, a reasonable factual inference could be drawn in favor of Plaintiffs on the question of whether the COLOR Snap system possesses the required limitation of a "first and second mounting adaptor portions." *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 82–83 (2d Cir. 2004) (citation omitted) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."). At this stage of the proceedings, Defendant's argument that the limitation requires a first distinct

area "separated from" a second distinct area, and thus a so-called "intersection" at the beveled edge falls short. The Court, in its Ruling on claim construction, specifically recognized that "mounting adaptors" required two distinct portions, and that Defendant's proposed further limitation was inappropriate. The Court rejected Defendant's proposed construction—*i.e.*, that the Claim requires "the second portion of [each mounting adaptor] comprises a raised portion . . . and a beaded portion that extends from a portion of said inner wall of said raised portion . . . ." Haddock Patent at 10:51–61—and determined that this was a limitation expressed in dependent Claim 18, which is not at issue here. To construct Claim 15 in these terms would render Claim 18 mere surplusage, and therefore is inappropriate. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.").

The resolution of this issue, whether the COLOR Snap system possesses the required limitation of a "first and second mounting adaptor portions," therefore is an issue for trial.

As a result, summary judgment is not appropriate on this issue.

### 3. "Mounting Adaptor"

The Haddock Patent also requires a "mounting adaptor." Plaintiffs must prove that the COLOR Snap system includes "generally rectangular shaped bodies having first and second areas and that interfaces with the mounting clamp, and a cross member respectively."

Defendant argues that the COLOR Snap system does not have a generally rectangular shaped body. Def.'s Br. at 9 (citing Mercier Rep. at 16–17). Defendant points to photographs of the COLOR Snap system from various angles which do not appear generally rectangular to illustrate this point. Mercier Rep. at 17. While stating that the COLOR Snap system could be

described as rectangular from the plan view, Defendant further argues the "rectangular shaped body" term should be read to define a three-dimensional cuboid, which Defendant asserts the COLOR Snap system is not. Def.'s SMF ¶ 11–12.

To support this argument, Defendant cites Mr. Haddock's deposition, when Mr. Haddock states that the COLOR Snap system is not a cuboid, and alleges that Mr. Haddock admitted that the Claim Construction Order requires a three-dimensional rectangular object. Def.s Br. at 11–12 (citing Haddock Dep. at 232:13–18). In response, Plaintiffs argue that the COLOR Snap system is generally rectangular from at least one view, including the plan view.[3] Pls.' Opp'n Br. at 12–14. . Plaintiffs point out that their Haddock Patent shows the mounting adaptor from the plan view, and, given that the adaptor would not work for its intended purpose if it was not generally rectangular from the plan view, the claim's reference to "generally rectangular" is only intended to mean from the one view of the object. Pls.' Opp'n Br. at 13; Haddock Aff. ¶ 3, 5. Plaintiffs argue the reference to a cuboid shape is "non-sensical," because it is not included in the Claim Construction. Pls.' SMF ¶ 15, ECF No. 141.

Plaintiffs contend that Mr. Haddock, in his deposition, only stated that the object must be three-dimensional to function, not that it needed to be rectangular. Pls.' SMF ¶ 15. Plaintiffs further point out that Defendant's own Kovacs Patent's illustrated embodiment shows the COLOR Snap system as a rectangle from the plan view.[4] Pls.' Opp'n Br. at 14 (citing Kovacs Patent at Fig. 12B). Plaintiffs also challenge Mr. Mercier's qualifications as an expert under Rule 702 of the Federal Rules of Evidence. Pls.' SMF ¶ 6, 7, 8.

---

[3] A plan view is an orthographic projection of a 3-dimensional object from the position of a horizontal plane through the object, i.e., a section viewed from the top.

[4] Defendant has conceded that it sought "[the Kovacs Patent] to cover the [COLOR Snap system]." Def.'s Br. at 2.

The Claim Construction Order explicitly notes the need for flexibility of the mounting adaptor term construction and that the Haddock Patent may imply other "inventive embodiments." Claim Construction Order at 9. The language of the Haddock Patent intentionally does not limit the claim to its preferred embodiment, and was determined to include possible alternative structures. *See Creo Prods., Inc. v. Presstek, Inc.*, 305 F.3d 1337, 1346 (Fed. Cir. 2002) ("This Court has repeatedly held that it is improper to restrict a means-plus-function limitation by adopting a function different from that explicitly recited in the claim."). There is also no reference to the claim requiring the mounting adaptor be a cuboid. *See* Claim Construction Order at 8–10. The language of the Haddock Patent is clear intrinsic evidence that the "mounting adaptor" is not limited to the preferred embodiment. *See* Haddock Patent, 7:56–81.

Defendant also contends that, if the COLOR Snap system "interfaces with the mounting clamp, and a cross member respectively," to "interface" should be read to mean mating, and that the COLOR Snap system cannot mate without fasteners. Def.'s Br. at 12–13. But, this is the same argument Defendant made during the Claim Construction, when they sought to define "mounting adaptor" as requiring "the mounting adaptor [to be] engaged and interconnected with the cross member." Claim Construction Order at 8. This argument then unnecessarily limits the "mounting adaptor" language. *Id.* at 9. Mr. Haddock testified that the COLOR Snap system meets the "interface" requirement, as nothing in the claim language requires parts to be pulled apart to satisfy this requirement. Haddock Dep. at 238:1–10. Defendant's proposed definition of the term would import limitations into the constructed term, and render the Haddock Patent's use of the term "mate" to be superfluous.

Because a "mounting adaptor" is not limited to a cuboid-shaped embodiment, a reasonable juror could find that that the COLOR Snap system does appear generally rectangular from at least one view. Because a reasonable factual inference could be drawn in favor of Plaintiffs on the question of whether the COLOR Snap system possesses the required limitation of a "mounting adaptor," summary judgment is inappropriate on this issue. *See Sec. Ins. Co. of Hartford*, 391 F.3d at 83 (citation omitted) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.").

### 4. "Cross Member"

The Haddock Patent also requires a "cross member." Plaintiffs must prove that the COLOR Snap system includes "a panel with a channel adapted to receive a roofing material and having a rear portion with an outwardly extending multi-surfaced protrusion designed to mate with corresponding substantially inverse surfaces of the second portion of the mounting adaptor."

Defendant argues that the COLOR Snap system lacks a multi-surfaced protrusion, and that its product's cross member does not mate with the second portion of the mounting adaptor. Def.'s Br. at 13. The Haddock Patent discloses the necessary "protrusion" as: the "alignment leg 220 protrudes from upright 208 and is positioned such that the distal portion 224 of the alignment leg 220 is opposite the upper alignment surface 216." Haddock Patent, at 5:15–18. Defendant asserts that this is the only "protrusion" mentioned or described in the 'Haddock Patent, a limitation not possessed of the COLOR Snap system or required by its patent.

Mr. Haddock testified in his deposition that the 364 structure is a multi-surfaced protrusion that mates with 228 and 224. Haddock Dep. at 209:23–210:7. Mr. Haddock further

testified that the cross member does not appear to have an alignment leg. *Id.* 202:2–203:12. Mr. Mercer explained that the alignment leg protrusion creates a mating connection between inverse surfaces. Mercier Rep.at 5–6.

Defendant asserts that the mounting adaptor itself must interconnect and mate with the cross member—a requirement, Defendant argues, the COLOR Snap system does not meet. Mr. Mercier opines that the alignment leg protrusion creates a mating connection between inverse surfaces. Mercier Rep. at 18–22. Mr. Haddock acknowledged that the mounting adaptor in the COLOR Snap system mates with the cross member at "multiple surfaces within th[e] area of the second portion of the mounting adaptor, mating substantially inverse portions, surfaces of the protrusion of the cross member." Haddock Dep. at 217:17–21. He further noted that C2 indicates the "second portion of the mounting adaptor within which those multiple surfaces are located." *Id.* at 217:25–218:2. He testified that the fastener provides the tension between the second portion of the mounting adaptor that mate with the substantially inverse portions of the cross member, of which the mounting clamp is a necessary component. *Id.* at 218:3–16.

Defendant argues that the Haddock Patent contemplates a mounting plate that mates with the cross member without the need for a fastener or mounting adaptor. Mr. Haddock testified that the cross member in the Haddock Patent could mate with the mounting adaptor without the use of a fastener and a mounting adaptor. *Id.* at 219:6–10. Defendant therefore argues that Plaintiffs concede that the cross member element is missing from the COLOR Snap system.

In response, Plaintiffs argue that the Court's claim construction ruling recognized that multiple structures in the Haddock patent could be considered protrusions. *See* Ruling on Claim Construction at 11–12 (recognizing that "the channel portion of 204 of the panel support member 108 need not be in a generally circular shape, as in the illustrated embodiment. All that is

required is that it be shaped to allow movement along the line perpendicular to a cross section of the panel support member 108 when mated with a corresponding section of the mounting adaptor 12").

Using this definition, Mr. Haddock opines that there are at least four different surfaces on the H' protrusion that mate with substantially inverse surfaces of the top block. Haddock Rebuttal Rep. at 18, 22. Furthermore, Mr. Kovacs, who designed the COLOR Snap system and the named inventor on its patent, termed the H' protrusion an "anchor" and recognized that it includes different radii for different surfaces. Kovacs Dep. at 45:9–15. Mr. Haddock opines that the surfaces of the top block interfaces with the corresponding inverse surfaces of the cross member with our without the use of the clamp. *See, e.g.*, Haddock Dep. at 238:1–10 (recognizing that the first and second areas of the mounting adaptor interface with the mounting clamp and cross member). Furthermore, Mr. Mercier opines that the top block and cross member "in contact" when the device is "actually installed." Mercier Dep., Vol. II, at 48:13–15, ECF No, 141-7.

Plaintiff argues that Defendant, again, tries to unduly limit the cross member element, given that neither the claims nor the Court's claims construction require that "to mate" requires the mounting adaptor and cross member surfaces to come into contact with one another and be joined without support from any other component.

In any event, the differences in opinions, as expressed by Mr. Haddock and Mr. Mercier, are factual issues, best left for resolution at trial. At a minimum, Plaintiffs have "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli*

*Lilly & Co.*, 654 F.3d 347, 358 (2d. Cir. 2011). As a result, summary judgment will be denied on this issue.

**5.**      **"First And Second Means For Detachably Interconnecting Said Cross Member With Said Second Adaptor Portion Of Said First And Second Mounting Adaptors, Respectively."**

The Haddock Patent also requires a "first and second means for detachably interconnecting said cross member with said second adaptor portion of said first and second mounting adaptors, respectively." Plaintiffs therefore must prove that the COLOR Snap system includes "first and second surfaces of the second portion of each mounting adaptor that interface with substantially inverse surfaces of the cross member protrusion."

Defendant argues that the COLOR Snap system does not have a structure sufficient to create even one means of interconnection between the mounting adaptor and the cross member. Def.'s Br. at 20 (citing Mercier Rep. at 21). Defendant argues that the word "interface" means "to join together," and that one plane of the structure being in contact with another plane is insufficient to constitute an interconnection of interface; joining together requires that two surfaces become one and you have to pull them apart for them to become separated. Haddock Dep. at 212:1–8.

Defendant states that Mr. Haddock identified the alleged means of interconnection in the COLOR Snap system during his deposition by circling two areas of the top block that interface with the cross member. Haddock Dep. at 264:11–267:19. Defendant argues that because these points of contact are not joined together in such a way that they can resist movement, the COLOR Snap system does not meet the terms of the claim. Def.'s Br. at 20. Defendant compares the COLOR Snap system to the commercial embodiment of the Haddock Patent to demonstrate the difference in the interconnections between the two products, arguing that the COLOR Snap

system does not meet the term's requirements. *See* Mercier Report at 30 (showing a diagram of the accused product with a label reading "No mating connection inverse surface of cross member").

Plaintiffs dispute Defendant's definitions of the Claim's language. Plaintiffs assert that the Court's claim construction ruling "specifically stated that it is improper to limit the claim term." Pls.' SMF ¶ 31. Even if the Court had adopted Defendant's limitation on the meaning of "interface," Mr. Haddock has opined that then an "interface" could mean "a surface forming a common boundary between adjacent regions, bodies, substances, or phases," Haddock Rebuttal Rep. at 17, and has identified at least four different connection surfaces. *See* Haddock Dep. at 203:16-206:20; 238:1–10; 240:20–241:2; 272:6–13.

The Claim Construction Order states that the element allows for a "range of permissible structures," and generally discloses a structure with "any mating configuration that allows for movement of the cross member along the second adaptor portion in a line perpendicular to a cross section of the cross member" Claim Construction Order at 13–17. Defendant tries to re-define the terms of the element, specifically "interface," to mean "joined together." Def.'s Br. at 18–19. This is a narrower definition than what Mr. Haddock asserts, who stated interface can mean "a surface forming a common boundary." Haddock Rebuttal Rep. at 17; *see also SkinMedica*, 727 F.3d at 1195 (noting that during claim construction, terms are not always afforded their ordinary meaning, and if a special definition is given a term by the inventor, the "inventor's lexicography governs" (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005))). The Claim Construction Order, however, states that the term's language only requires that the surfaces connect and disconnect from each other, and that this requirement may

be met by means other than the commercial embodiment of the Haddock Patent. *See* Claim Construction Order at 13–14.

"Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). The Court therefore declines to modify the District of Colorado's earlier construction of the term.

Furthermore, assuming without deciding that the Haddock Patent specifies "two interconnections," Defendant has failed to provide a basis in the record for its otherwise conclusory statement that "one plane of a structure being in contact with another plane of a structure is not enough to create an interconnection, or 'interface,'" or, that the alleged interfacing surfaces in the COLOR Snap System are "not capable of being operated in an infringing mode." Def.'s Br. at 20. It is well-settled that ultimate or conclusory facts are owed no deference on a summary judgment motion. *BellSouth Telecomms., Inc. v. W.R. Grace & Co*, 77 F.3d 603, 615 (2d Cir. 1996).

Similarly, Defendants have offered the opinion of Mr. Mercier to support the proposition that the COLOR Snap system possesses no structure sufficient to create one means of interconnection, much less two. But Defendant offers no evidentiary basis for this opinion and thus the Court need not consider it. *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1080 (Fed. Cir. 2005) ("A party does not manufacture more than a merely colorable dispute simply by submitting an expert declaration asserting that something is black when the moving party's expert says it is white; there must be some foundation or basis for the opinion." (citing *Anderson,* 477 U.S. at 247–48 (emphasis added) ("[T]he mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.")).

Having found evidence in the record from which a reasonable factual inference could be drawn as to whether the COLOR Snap system meets the limitations of Claim 15, summary judgment on the issue of infringement is improper. *See Security Ins. Co. of Hartford*, 391 F.3d at 82–83 (citation omitted) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.").

### B.     Invalidity

In the alternative, Defendant argues that the Haddock Patent is invalid. Def.'s Br. at 24. Defendant argues that an earlier patent, the Stearns Patent, anticipates or made obvious Claims 15, 16, and 20 of the Haddock Patent. *Id.* Defendant maintains that, in the Stearns Patent, all elements of the asserted claims of the Haddock Patent are found, and Plaintiffs' asserted claims therefore are invalid. Defendant further argues that Plaintiffs' asserted claims fail due to their indefiniteness. *Id.* at 35. The Court disagrees.

"A patent is presumed valid[,] and the party asserting invalidity has the burden of persuasion to show the contrary by clear and convincing evidence." *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 870 (Fed. Cir. 2010). Having moved for summary judgment on invalidity by anticipation, "[t]he challenger has the burden of going forward with invalidating prior art. The patentee then has the burden of going forward with evidence to the contrary, *i.e.*, the patentee must show that the prior art does not actually invalidate the patent or that it is not prior art because the asserted claim is entitled to the benefit of an earlier filing date." *Id.* at 870 (internal citation omitted). "[I]f the movant meets its initial burden of proving invalidity by

anticipation and the patentee fails to respond with evidence rebutting that showing of anticipation, then summary judgment should be granted in favor of the movant." *Hubbell, Inc. v. Pass & Seymour, Inc.*, 781 F. Supp. 2d 67, 71 (D. Conn. 2011) (citing *Research Corp. Techs.*, 627 F.3d at 870).

### 1.    Anticipation

Defendant argues that the Sterns Patent anticipates Claims 15, 16, and 20 of the Haddock Patent and the Haddock patent therefore is invalid. The Court disagrees.

"To meet the requirements of patentability a device must be new; that is, it must not have been previously known." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1349 (Fed. Cir. 1998). A devise that is not novel is "anticipated." *Id.*

If, among other things, a claimed invention was "in public use or on sale in this country, [for] more than one year prior to the date of the application for patent in the United States," 35 U.S.C. § 102(b), then the claimed invention is said to have been anticipated by the prior art and is, therefore, invalid. *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008).

A determination of invalidity for prior public use under section 102(b) requires comparing the claim to the alleged public use. "Section 102(b) may bar patentability by anticipation if the device used in public includes every limitation of the later claimed invention . . ." *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1321 (Fed. Cir. 2002). Although the elements must correspond, the anticipation inquiry focuses on the entirety of the claimed invention, rather than on simple element-to-element matching. *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 716 (Fed. Cir. 1984).

Put another way, "anticipation requires there to be 'no difference between the claimed invention and the reference disclosure *as viewed by a person of ordinary skill in the art.*"

*Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 641 (Fed. Cir. 2011) (emphasis in original) (quoting *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991), *overruled in part on other grounds by Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282 (Fed. Cir. 2009)). Thus, "[t]he dispositive question regarding anticipation is whether one skilled in the art would reasonably understand or infer from the prior art reference's teaching that every claim element was disclosed in that single reference." *Art+Com Innovationpool GmbH, v. Google LLC*, 712 Fed. App'x 976, 981 (Fed. Cir. 2017) (quoting *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1368 (Fed. Cir. 2003)).

Anticipation therefore "is a question of fact . . . and may only be resolved on summary judgment if there is not genuine issue of material fact." *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1356–57 (Fed. Cir. 2008) (citations omitted). "If there are differences between a prior work and the invention for which a patent is sought, [35 U.S.C] § 103(a) automatically comes into play, and the inquiry then becomes whether those differences are such that the invention would have been obvious." Robert L. Harmon *et al.*, *Patents and the Federal Circuit* 117 (11th ed. 2013).

Applying these principles to the construed claims at issue, the Court compares each of the claims of the Haddock Patent to the prior art to determine whether Defendant has carried its burden of proving anticipation by clear and convincing evidence. The answer is no.

The United States Patent Office issued the Stearns Patent, "Impervious Membranous Roof Snow Fence System," two years and two months before the Haddock Patent. Defendant argues that the prior art discloses a snow fence system analogous to the Haddock Patent. Haddock Dep. at 303:1–5 (recognizing that "one of the primary uses of both our art in this case and PMC's art in this case . . . is as a snow retention device.").

The Haddock Patent specifies that the patented apparatus includes a "mounting clamp" that "typically has a slot formed in it for receiving the raised portion of the surface to which the claim is to be affixed." Haddock Patent at 4:42–44. A mounting clamp is "fixedly interconnected" to a mounting adaptor using a "fastener." *See id.* At 44–46. It further specifies that the "fastening members may be provided in the mounting clamp to engage the raised portion of the mounting surface," and screws or bolts are "suitable fasteners." *Id.* at 4:44–49.

Defendant argues that the Stearns Patent discloses a "mounting plate" that, like the Haddock Patent, attaches to a roof and to a mounting adaptor; Defendant therefore conclude that this structure is the mounting clamp specified by the Haddock Patent. In support, Defendant offers the language of the Haddock Patent, but points only generally at figures one, four, and seven of the Stearns Patent, while providing no probative evidence of the figures' meaning or interpretation, or, how, for purposes of this motion, this Court is meant to infer such a conclusion.

Defendants then labeled diagrams as reading "mounting clamp" and "First and Second Mounting Clamps." But "ultimate or conclusory facts and conclusions of law . . . cannot be utilized on a summary judgment motion." *BellSouth Telecomms., Inc.* 77 F.3d at 615 (quoting 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2738, at 486 & 438 (1983)); *see also Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 85 (2d Cir. 2005) ("The law is well established that conclusory statements, conjecture, or speculation are inadequate to defeat a motion for summary judgment." (internal quotation marks omitted) (quoting *Opals on Ice Lingerie v. Body Lines, Inc.*, 320 F.3d 362, 370 n.3 (2d Cir. 2003)).

Defendant also relies on Mr. Haddock's testimony that a mounting claim "can [be] define[d] as you please," Haddock Dep. 364:4–7, but has not provided an evidentiary foundation

or basis of support from which a reasonable juror could find that the prior art includes the limitation. *See* D. Conn. L. Civ. R. 7(a)(3) (providing that the Court need not "review portions of the record in response to a motion, where the . . . papers do not make specific reference to . . . the record"); *see, e.g.*, *Hubert v. Dep't of Corr.*, No. 3:17-CV-00248 (VAB), 2018 WL 3350334, at *3 (D. Conn. July 9, 2018) (declining to reconsider the plaintiff's continuing violation theory because she provided no citation to allegations in the complaint to support the theory); *Colon v. Metro-N. Commuter R.R. Co.*, No. 3:13-cv-00325 (JAM), 2018 WL 2316728, at *4 (D. Conn. May 22, 2018) (holding that, under D. Conn. L. Civ. R. 7(a)(3), the plaintiff's "vague complaints" without any citation to the record about the defendants' closing argument did not warrant a new trial); *Skyline Steel, LLC v. Pilepro, LLC*, 101 F.Supp.3d 394, 400 (S.D.N.Y. 2015) (requiring citation to record evidence on summary judgment) (citing *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001)).

Although "the teaching in the prior reference need not be *ipsissimis verbis*, nevertheless, there must be a teaching with respect to the entirety of the claimed invention." *Structural Rubber Prods. Co.*, 749 F.2d at 716. Defendant, as the movant, has failed to meet its initial burden, *Hubbell, Inc.*, 781 F. Supp. 2d at 71, of showing "no difference between the claimed invention and the reference disclosure *as viewed by a person of ordinary skill in the art.*" *Bettcher Indus., Inc.*, 661 F.3d at 641 (emphasis in original). Summary judgment by reason of anticipation therefore is denied. *See Structural Rubber Prod. Co.*, 749 F.2d at 717. (finding legal error where the trial court gave the jury the question of novelty on which there was no evidence arguably showing identity with a prior art disclosure).

### 2. Obviousness

Defendant also argues that the prior art renders the claimed invention invalid by obviousness. The Court disagrees.

"A claimed invention is unpatentable if the differences between it and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the pertinent art." *Tokai Corp. v. Easton Enter., Inc.*, 632 F.3d 1358, 1366 (Fed. Cir. 2011) (citing 35 U.S.C. § 103(a) (2006)); *see also Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966)). "A patent is obvious if it is merely predictable use of prior art elements according to their established functions." *Perricone v. Medicis Pharm. Corp.*, 539 F. Supp. 2d 571, 584 (D. Conn. 2008) (internal quotation marks omitted) (quoting *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007)).

The analysis to determine obviousness is objective.

> Under Section 103 the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*KSR Int'l Co.*, 550 U.S. at 406 (quoting *Graham*, 383 U.S. 17–18). The ultimate question of obviousness is one of law based on these "several basic factual inquiries." *Graham* 383 U.S. at 17; *see also Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 96 (2011) (citing *Graham* 383 U.S. at 17).

"The party seeking to invalidate a patent is also required to articulate an 'apparent reason' for altering the prior art to achieve the claimed invention." *Perricone*, 539 F. Supp. 2d at 584

(quoting *KSR Int'l Co.*, 550 U.S. at 418). Such articulation is done through the "'teaching, suggestion, or motivation' test (TSM) test, under which a patent claim is only proved obvious if 'some motivation or suggestion to combine the prior art teachings' can be found in the prior art, the nature of the problem, or the knowledge of a person having ordinary skill in the art." *KSR Int'l Co.*, 550 U.S. at 407.

"When the parties dispute the underlying facts, the issue of obviousness typically is submitted to the jury . . . ." *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1108 (Fed. Cir. 2003) (citing *Jurgens v. McKasy,* 927 F.2d 1552, 1557 (Fed. Cir. 1991)).

Defendant offers the testimony of Mr. Haddock to support its obviousness argument. Mr. Haddock testified that a POSITA "probably" would have been aware of the Stearns technology. Haddock Dep. at 361:19–362:5. Mr. Haddock further testified that a POSITA "perhaps" would have referenced the prior art when formulating the invention of the Haddock Patent. *Id.* at 362:2–5. This evidence, however, only highlights that there is a dispute of the underlying facts. Although a POSITA may have known or referenced the prior art, this is not the same as demonstrating, through evidence, that "at the time of invention[,] a known problem for which there was an obvious solution encompassed by the patent's claims[,]" made obvious the claimed invention's subject matter. *KSR Int'l Co.*, 550 U.S. at 419–20.

Having failed to meet its initial burden, *Hubbell, Inc.*, 781 F. Supp. 2d at 71, of showing that the Haddock Patent is "merely [a] predictable use of prior art elements according to their established functions," *Perricone*, 539 F. Supp. 2d at 584 (quotation marks omitted), summary judgment on the issue of obviousness is denied. *See KSR Int'l Co.*, 550 U.S. at 422 (finding obviousness where "[a] person having ordinary skill in the art could have combined the prior art with a sensor in a fashion encompassed by claim 4, and would have seen the benefits of doing

so"); *Medinol Ltd. v. Guidant Corp.*, 412 F. Supp. 2d 301, 327 (S.D.N.Y. 2005) (finding a trialable issue of "whether one of ordinary skill in the art in 1994 would have been motivated to combine the [prior art] references to create the claimed invention").

### 3. Indefiniteness

Finally, Defendant argues that the Haddock Patent is unpatentable under 35 U.S.C § 112, because the claims or constructions broaden the invention that is specifically disclosed and described, such that the bounds of the claim are insufficiently clear or indefinite to reasonably apprise those skilled in the art of both the utilization and scope of the invention. The Court disagrees.

The specification of a patent must include "one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b). "Because claims delineate the patentee's right to exclude, the patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention, i.e., what subject matter is covered by the exclusive rights of the patent. Otherwise, competitors cannot avoid infringement, defeating the public notice function of patent claims." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008) (citing *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996)). A court will find a claim indefinite "only where a person of ordinary skill in the art could not determine the bounds of the claims, i.e., the claims were insolubly ambiguous." *Id.,.* at 1249.

Here, however, there is no citation to the record to support Defendants indefiniteness argument. *See* D. Conn. L. Civ. R. 7(a)(3) (providing that the Court need not "review portions of the record in response to a motion, where the . . . opposition papers do not make specific

reference to . . . the record"); *see, e.g.*, *Hubert v. Dep't of Corr.*, 2018 WL 3350334, at *3

(declining to reconsider the plaintiff's continuing violation theory because she provided no

citation to allegations in the complaint to support the theory); *Skyline Steel, LLC*, 101 F.Supp.3d

at 400  (requiring citation to record evidence on summary judgment) (citing *Novartis Corp*, 271

F.3d at 1046). As a result, summary judgment on the question of indefiniteness is denied.

## IV.     CONCLUSION

For the reasons discussed above, the motion for summary judgment is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of August, 2018.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE